UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
NAISHA JACKSON,                        :     10 CIV. 9193 (DLC)
                    Plaintiff,         :
                                       :     MEMORANDUM OPINION
          -v-                          :        & ORDER
                                       :
NEW YORK CITY DEPARTMENT OF EDUCATION  :
and GOOD SHEPHERD SERVICES,            :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X

Appearances:

For Plaintiff:
Sherilyn Dandridge
The Dandridge Law Firm
1120 Ave. of the Americas, 4th Floor
New York, NY 10036

For Defendant New York City Department of Education:
Michael A. Cardozo
Corporation Counsel Office City of New York
100 Church Street
New York, NY 10007


DENISE COTE, District Judge:

     On May 22, 2012, the defendant New York City Department of

Education (the "City") filed a motion to enforce the parties'

settlement agreement (the "May 22 Motion").  The May 22 Motion

argues that the parties came to a settlement agreement on March

23, 2012 following a March 22 settlement conference before

Magistrate Judge Debra C. Freeman ("Magistrate Freeman").  For

the following reasons, the May 22 Motion is granted.

BACKGROUND

The following facts are undisputed.  Plaintiff Naisha Jackson ("Jackson") brought this action on December 8, 2010 pursuant to 42 U.S.C. §§ 1981, 1983 and New York City and State Human Rights Law, alleging that the defendant Good Shepherd Services ("Good Shepherd"), a not-for-profit corporation, wrongfully terminated her employment as a Student Intern Coordinator at Bronx Community High School.  By Opinion and Order of August 24, 2011, all remaining claims against Good Shepherd were dismissed with the exception of the race discrimination claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq., and the New York State and City Human Rights Laws, and all remaining claims against the City were dismissed with the exception of the race discrimination claim pursuant to Title VII.

The case was referred to Magistrate Freeman for purposes of settlement on March 1.  On March 22, the parties participated in a settlement conference before Magistrate Freeman.  The plaintiff was present at this conference and represented by counsel.  At the conclusion of the conference, the defendants verbally offered the plaintiff $18,000 in exchange for settling the case.  On March 23, plaintiff's counsel informed the defendants by telephone that plaintiff had accepted this offer.

Later that day, plaintiff's counsel sent an email to the
defendants stating the following:

> This will confirm that Ms. Jackson has agreed to
> accept the Defendant's offer of $5K from the city and
> $13K from Good Shepherd Services in exchange for
> withdrawing the current case and a general release of
> all claims.  Mr. Monte has agreed that his firm will
> draft the settlement papers and circulate them.  I
> will contact chambers to let Judge Freeman know that
> we have reached a settlement.

Beginning on April 2, counsel for the plaintiff and the
defendants circulated emails discussing the drafting of
settlement papers.  On April 3, plaintiff's counsel spoke with
this Court's chambers by telephone, indicating that a settlement
had been reached and discussing the submission of a stipulation
of settlement.  As of that date, the trial in this case was due
to commence on April 30.  An Order of Discontinuance was entered
on April 10, giving the parties thirty days from the date of
entry to restore the matter to the Court's calendar.  A draft
settlement agreement was circulated among counsel for the
parties on April 18.  On April 20, plaintiff's counsel
indicated, by email, that defendants' response to the last of
his requested changes was "Ok," and requested a finalized
version to send to his client.

On May 1, the Court received a letter from plaintiff's
counsel indicating that the plaintiff had retained new counsel.
On May 2, the Court received a letter from plaintiff's new

counsel indicating that the case was not settled.  Also on May 2, plaintiff's new counsel filed a notice of appearance.  On May 3, the Court issued an Order restoring this case and setting a new schedule.  The City filed its motion to enforce the parties' settlement agreement on May 22.  Counsel for Good Shepherd filed a declaration in support of the May 22 Motion on May 29.  The May 22 Motion became fully submitted on June 1.

DISCUSSION

The May 22 Motion is granted because it is presumed that plaintiff's counsel had authority to settle on plaintiff's behalf.  The words and deeds of the parties indicate that they intended to enter into a binding settlement agreement on March 23, 2012.

1.   The Authority of Plaintiff's Counsel

In a case arising under federal law, federal precedent governs the scope of counsel's authority.  See In re Artha Mgmt., Inc., 91 F.3d 326, 328 (2d Cir. 1996).  The plaintiff's claims in this case arise under Title VII.  Federal law therefore applies to the question of her counsel's authority.

Under federal law, it is presumed that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, has authority to do so.  Id. at 329.  "[A]ny

4

party challenging an attorney's authority to settle the case under such circumstances bears the burden of proving by affirmative evidence that the attorney lacked authority."  Id. This burden is "not insubstantial."  Id. (citation omitted). Here, the plaintiff presents no evidence indicating that her attorney lacked authority to enter into a settlement agreement on her behalf.  Plaintiff's attorney is thus presumed to have had authority to enter into the settlement agreement on March 23.

2.   The Settlement Agreement

Under Winston v. Mediafare Entertainment Corp., 777 F.2d 78 (2d Cir. 1985), a binding settlement may be entered orally, so long as the parties had the intent to be bound at the time of the alleged formation.  Id. at 80.  An expectation that the parties would "commit their agreement to writing" does not preclude a finding that the oral agreement is binding.  Id.  The Winston court set out four factors relevant to the determination of whether an intent to be bound existed:

> (1) whether there has been an express reservation of
> the right not to be bound in the absence of a writing;
> (2) whether there has been partial performance of the
> contract; (3) whether all of the terms of the alleged
> contract have been agreed upon; and (4) whether the
> agreement at issue is the type of contract that is
> usually committed to writing.  These circumstances may
> be shown by oral testimony or by correspondence or
> other preliminary or partially complete writings.

5

Id. (citation omitted).  In this case, three of these factors weigh in favor of enforcing the settlement agreement.  The fourth factor is essentially neutral, and does not outweigh the conclusion suggested by the other factors.

A.  Express reservation?

The plaintiff has pointed to no express reservation by either party of the right not to be bound in the absence of a writing.  Rather, the parties agreed to terms orally, these terms were confirmed in writing, and the Court was advised of a settlement.  The plaintiff claims that the parties' discussion of the need to execute a formal settlement agreement constituted an express reservation of the right not to be bound.  Discussing execution of a formal document, however, is not the same as reserving the right not to be bound in the absence a formal document.  Plaintiff points to no authority indicating otherwise.

B.  Partial performance?

There has been partial performance on the contract.  After forming an oral agreement on March 23, the parties began to perform on the agreement by preparing and exchanging draft settlement documents, and most significantly, communicated the settlement to the Court.  Cf. United States v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars

($660,200.00), More or Less, 423 F. Supp. 2d 14, 28-29 (E.D.N.Y. 2006) (drafting and delivering settlement documents constitutes part performance).

C. Anything left to negotiate?

The material terms of the settlement were agreed upon on March 23, 2011.  It is true that even "minor" or "technical" modifications to a settlement agreement may indicate that the parties did not intend to be bound prior to these modifications. Winston, 777 F.2d at 82.  On the other hand, such changes are relevant only if they show that "there were points remaining to be negotiated such that the parties would not wish to be bound until they synthesized a writing satisfactory to both sides in every respect."  Powell v. Omnicom, 497 F.3d 124, 130 (2d Cir. 2007).  The continuous redrafting of specific terms may indicate lack of agreement on material terms.  See Winston at 82-83.

In this case, there is no evidence of any disagreement among the parties on the terms of the contract during the drafting period until the plaintiff retained new counsel.  In his March 23 email, plaintiff's counsel confirmed that these terms consisted of $5,000 from the City and $13,000 from Good Shepherd paid to the plaintiff in exchange for withdrawal of the action and a general release of all claims.  Subsequently, there was no continuous redrafting of these or any other terms.

7

The plaintiff claims that she expressed reservations to her attorney about receiving a neutral letter of reference from Good Shepherd.  But there is no indication in the record that this concern was a source of disagreement among the parties.  On the contrary, the emails exchanged among counsel in April indicate that they had already agreed on all the material terms of the settlement.  Moreover, the draft settlement agreement circulated by the defendant included a provision that "in the event of reference checks or inquiries directed to Good Shepherd Services, it shall provide in response only the dates of the Plaintiff's employment and her ending salary."  The plaintiff has not specified how or why the language in the draft settlement fails to address her concerns, or suggested alternative language that might better address them.  Nor has she suggested that the proposed response by Good Shepherd to employer inquiries does not comport with the custom in the industry.  In separate emails from April 18 to April 20, plaintiff's counsel indicated that he was "fine" with defendants' draft "as is," that he was "fine with" subsequent changes to the draft, and that further changes were "Ok."

D.  Usual form?

The draft settlement agreement circulated by the parties in this case contained a provision concerning how future requests for employee references would be handled and a provision

8

prohibiting the plaintiff from reapplying for employment with the defendant.  Typically, provisions of this type will be reduced to writing.  See Powell, 497 F.3d at 131.

In this case, plaintiff's counsel confirmed the major terms of the contract orally and in writing on March 23, and plaintiff's counsel indicated on at least three separate occasions via e-mail that he approved of a draft written settlement agreement that included the above provisions.  In these circumstances, the expectation that a written agreement would follow does not prevent a finding that the parties had already reached a binding settlement.

E.  C.P.L.R. 2104

The plaintiff claims that the settlement agreement is not binding pursuant to C.P.L.R. 2104.  According to this rule:

> An agreement between parties or their attorneys
> relating to any matter in an action, other than one
> made between counsel in open court, is not binding
> upon a party unless it is in a writing subscribed by
> him or his attorney or reduced to the form of an order
> and entered.

N.Y. C.P.L.R. 2104 (McKinney).

The Second Circuit has left undecided the question of whether federal or state law controls the enforceability of a settlement agreement when a federal court sits in diversity. See Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 n.1 (2d Cir. 1997).  Regardless, the settlement agreement was,

in fact, reduced to a writing subscribed by plaintiff's attorney.  Under New York law, an e-mail from counsel that contains counsel's name printed at its end constitutes a signed writing.  See, e.g., Williamson v. Delsener, 874 N.Y.S.2d 41 (App. Div. 2009).  On March 23, plaintiff's counsel sent an e-mail to defense counsel that described the material terms of the agreement, indicated counsel's intention to be bound by these terms, and included counsel's printed name at the end.  This e-mail satisfies the requirements of C.P.L.R. 2104.

CONCLUSION

The City's May 22, 2012 motion to enforce the parties' settlement agreement is granted.

SO ORDERED

Dated:  New York, New York
        June 4, 2012

                              DENISE COTE
                        United States District Judge

10